**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NICHOLAS A. BRADLEY,       :     CIVIL NO.: 1:24-cv-00541
                            :
      Plaintiff,        :     (Magistrate Judge Schwab)
                            :
      v.              :
                            :
                            :
LELAND DUDEK,[1]       :
Acting Commissioner of    :
Social Security,          :
                            :
      Defendant.     :

## MEMORANDUM OPINION

### I. Introduction.

In this social security action, Plaintiff Nicholas A. Bradley seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g). For

---

[1] Leland Dudek is now the Acting Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to *9-10*.[2]  In October 2021, Bradley protectively filed[3] an application for disability insurance benefits, alleging that he has been disabled since January 31, 2021. *See Admin. Tr.* at 179–80.  After the Commissioner denied his claims at the initial level and at the reconsideration level of administrative review, Bradley requested an administrative hearing. *Id.* at 106–07.  In January 2023, Bradley —who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Richard Guida (the "ALJ"). *Id.* at 41–68.  In May 2023, the ALJ denied Bradley's claim for benefits. *Id.* at 21–40.  Bradley appealed the ALJ's decision to the Appeals Council, which denied his request for review. *Id.* at

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Bradley's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In March 2024, Bradley, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See Doc. 1.*  He requests that the court find that he is entitled to benefits or grant such other relief as is justified. *Id.* at 7 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7.*  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9.*  The parties filed briefs, *see docs. 10, 14*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Bradley is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Bradley met the insured-status requirements through March 31, 2026. *Admin. Tr.* at 25, 27.

ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On May 9, 2023, the ALJ denied Bradley's claim for benefits. *Admin. Tr.* at 21–40. He proceeded through the first four steps of the five-step sequential-evaluation process.

## A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Bradley had not engaged in substantial gainful activity since his alleged onset date of January 31, 2021. *Id.* at 27.

## B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Bradley had the following severe impairments: cancer and obesity. *Id.*  The ALJ also found that Bradley's medically determinable mental impairments of depression and attention deficit-hyperactivity disorder were not severe. *Id*. at 27–29.[5]

## C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Bradley did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 29.  Specifically, the ALJ considered Listing 13.14 with respect to Bradley's lung cancer and Listing 13.24 with respect to his prostate cancer. *Id*. And he evaluated Bradley's obesity under SSR 19-2p. *Id*.

---

[5] Because Bradley does not raise any issues about how the ALJ analyzed his mental impairments, we will not further mention those mental impairments, including when summarizing the rest of the ALJ's decision.

**D.  The RFC.**

The ALJ then determined that Bradley had the RFC to do light work[6] with some limitations. *Id*.  He concluded that Bradley could frequently engage in postural movements; occasionally climb ladders, ramps, and stairs; and he must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. *Id*.

In making this RFC assessment, the ALJ observed that Bradley asserts that he is disabled "secondary to cancer with its residual effects and the effects of treatment, which include urinary leakage, bladder spasms, fatigue, weakness, decreased energy, and concentration deficits." *Id*. at 30.  The ALJ acknowledged that Bradley "reports that following radiation treatments, he tires easily and does not perform household chores[,]" "that he does not lift objects more than ten pounds due to bladder issues and urinary leakages following prostate surgery[,]" and that he "walks about five to ten minutes before needing to rest for five minutes." *Id*.  "He reports having bladder issues with frequent urination during the

---

[6] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

day and with urinary leakage." *Id.* "Specifically, he testifies to initially using the bathroom every fifteen minutes and again ten to twelve times during a five-hour shift as a security guard." *Id.* The ALJ also recounted that Bradley testified that "[s]ince having surgery for lung cancer, he has pain on the right side that is aggravated by physical activity[,]" and that "[h]e describes this pain as moderate in severity and sharp in nature." *Id.*[7]

The ALJ concluded that although Bradley's impairments "could reasonably be expected to cause the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

In making the RFC assessment, the ALJ also considered Bradley's medical records and concluded that they were not consistent with and do not support Bradley's contentions regarding the intensity, persistence, and limiting effects of his impairments. Regarding Bradley's prostate cancer, the ALJ explained:

> While the medical records reveal that [Bradley] has prostate cancer, the medical records do not reveal debilitating functional limitations. The urology records showed [Bradley] with rising PSA levels over a several year period. The August 2020 biopsies found Gleason score of 7 (3+4) except one was a Gleason score of 8 (3+5). The September 2020 body scan

_____

[7] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

found no evidence of osseous metastases.  In February 2021, he underwent a prostatectomy.  The margins were focally positive for carcinoma.  He underwent radiation therapy, which developed acute side effects of frequent urination, urgency, and occasional leakage.  Radiation oncology expected improvement in one to two months.  The January 2022 testing found PSA less than .07.  Clinically, urology noted that [Bradley] maintained good urine control with some mild dysuria from the radiation, but [Bradley] reported no other complaints and denied incontinence.  He completed radiation therapy in January 2022.  The radiation oncology follow-up examination found [Bradley] doing well.  He reported a strong urinary stream, intermittent urgency and frequency, and some incontinence.  Urology continued to follow the claimant and monitor with a PSA, which has been good following the surgery.

*Id.*  And the ALJ summarized the medical records regarding Bradley's lung cancer

as follows:

Regarding lung cancer, [Bradley] underwent scoping for a transbronchial lung biopsy.  A September 2021 PET scan found lower lobe nodule on left.  Pulmonary function testing was normal.  The lung biopsy was positive for adenocarcinoma.  The October 2021 PET scan showed a slight increase in size from prior PET scans.  In October 2021, he underwent a right lower lobectomy and mediastinal lymphadenectomy.  Surgical pathology demonstrated no spread through air spaces and zero of eighteen positive lymph nodes for metastasis.  Post-operative visits found the surgical site healing well.  He did not require chemotherapy or radiation for lung cancer.  By December 2021, [Bradley] resumed normal activity with no cardiopulmonary limitations.  He noted some continued thoracic pain at the surgical incision site and reported taking one gabapentin daily for pain in February 2022.  He also received epidural steroid injections from pain management specialists for back pain associated with the lobectomy, which improved his ability to sleep on his side, as well as using a Lidocaine patch.  He denies shortness of breath.  Post-lobectomy pulmonary function testing found expected changes of 82 percent predicted FVC, 72

11

percent predicted FEV1, and 87 percent predicted DLCO.  The
February and August 2022 chest scans confirmed no evidence
of recurrence of lung cancer.  Physical examinations found
normal lung sounds and normal ambulation.  The August 2022
CT scan of the chest found minor atelectasis in the left lung
base otherwise the lungs are clear.

*Id*. at 30–31.

The ALJ also noted that Bradley's primary care provider found that Bradley

was "generally [d]oing well despite the cancer surgeries and treatment." *Id*. at 31.

"The provider noted normal examination findings with normal pulmonary effort

and breath sounds." *Id*.  There were no significant musculoskeletal issues or gait

issues." *Id*.  And although Bradley was obese, "the provider did not report issues

secondary to body habitus, such as limitations in breathing or movement." *Id*.

The ALJ considered Bradley's "statements concerning the intensity,

persistence, and limiting effects of the symptoms in accordance with SSR 16-3p[,]"

and he "found the statements are not consistent with the record." *Id*.  He explained

that "[i]n addition to the objective medical evidence not supporting [Bradley]'s

allegations of debilitating symptoms as noted above, [Bradley] has provided

inconsistent information regarding daily activities in that he has described daily

activities that are not limited to the extent one would expect given the complaints

of disabling symptoms and limitations." *Id*.  More specifically, the ALJ detailed

that Bradley "notes an ability to provide for personal care with assistance from

others, to prepare family meals, and to perform light household chores[,]" that

"[w]hile he noted less physical activity when receiving radiation therapy due to fatigue symptoms, [Bradley] noted improved daily functioning after recovery from the radiation treatment[,]" that "[h]e drives a vehicle and shops in stores[,]" that he "has been able to sustain part-time work as a security guard for two employers since the alleged onset date[,]" that "[h]e was able to walk security rounds despite allegations of fatigue and need to use the bathroom[,]" and that "[h]e also noted improvement with urinary frequency and leakage following therapeutic exercise." *Id*.  According to the ALJ, "[t]hese admitted abilities provide support, in part, for the residual functional capacity set forth above and are quite inconsistent with [Bradley]'s allegations of totally debilitating impairments." *Id*.

The ALJ observed that "statements on issues reserved to the Commissioner, disability examiner findings, decisions by other governmental agencies, and decisions by non-governmental entities are inherently neither valuable nor persuasive to the issue of whether a claimant is disabled or blind under the Social Security Act." *Id*.  The ALJ stated that although he "reviewed and considered such as part of the record[,]" he has not provided an analysis of this evidence. *Id*.

The ALJ also considered the opinions and findings of the state agency medical consultants—Dr. Hollick and Dr. Brown—who found Bradley "capable of standing and/or walking six hours and sitting six hours in an eight-hour workday, frequently performing postural activities but occasionally climbing ladders, ropes,

or scaffolds, and avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." *Id*. at 32. He found their opinions "consistent with the objective clinical findings showing improvement in functioning following surgeries and treatment for prostate cancer and lung cancer[,]" as well as "[p]hysical examinations show generally normal findings of gait, strength, and ranges of motion." *Id*. The ALJ noted that Bradely "recovered well from the surgeries for prostate cancer and for lung cancer and [from] radiation treatment." *Id*. And "[h]e has had normal lung sounds, and pulmonary function testing following the lobectomy showed expected decrease in overall lung functioning." *Id*. According to the ALJ, "Dr. Hollick and Dr. Brown support[ed] the[ir] opinions with citation to the objective medical records." *Id*. The ALJ also remarked that "Dr. Hollick and Dr. Brown are state agency physicians who have had an opportunity to examine and review the medical records submitted prior to their opinions and are familiar with the Social Security disability rules and regulations." *Id*.

The ALJ was "partially persuaded by the January 2022 medical opinion of Michael Watson, and the February 2022 medical opinion of Ali Annis, MD, that find Bradely able to work with no work restrictions." *Id*. According to the ALJ, those "opinions are persuasive to the extent that [they] support[] the limitations in the residual functional capacity assessment." *Id*. He also noted that "[t]he opinions are consistent with the objective clinical findings and the longitudinal medical

14

records showing improvement in functioning following prostate surgery and radiation therapy." *Id*. But the ALJ noted that Bradley has "some decreased lung capacity and functioning that supports a reduction to light work with occasional postural activities and with environmental restrictions." *Id*. And he acknowledged that "[t]he opinion of Dr. Watson does not consider the other severe impairments of lung cancer and obesity, which limits its probative value." *Id*.

The ALJ found the "January 2023 medical opinion of David Heeter, DO, [which] limits Bradley to sitting less than two hour and to standing and walking less than two hours in an eight-hour day along with rarely or never performing any postural activity" not persuasive. *Id*. He concluded that "[t]hese limitations are not consistent with the objective clinical findings or the longitudinal medical records showing [Bradley] doing well following cancer surgeries and treatment." *Id*. And the ALJ was of the opinion that "Dr. Heeter's own physical examination findings . . . that [Bradley] was doing well over all with normal examination findings do not support the opinion." *Id*. "Further," according to the ALJ, "there is no indication that [Bradley] would miss more than four days per month[,]" as "[t]his is not consistent with or supported by [Bradley]'s ability to sustain part-time work as a security guard for two separate employers or with [Bradley]'s daily activities." *Id*.

The ALJ concluded the medical evidence and the medical opinions that he found persuasive support his RFC. *Id*. at 33.  And he summarized the reasons for his RFC assessment:

> While the record is sufficient to establish [Bradley]'s medically determinable impairments, the medical evidence of record does not support the degree of symptoms—cancer with its residual effects and the effects of treatment, which include urinary leakage, bladder spasms, fatigue, weakness, decreased energy, and concentration deficits—and resulting functional limitations alleged by [Bradley].  The treatment has been essentially routine and conservative with no significant objective findings documented by the providers despite [Bradley]'s significant subjective allegations.  Further, [Bradley]  has admitted the capacity to engage in certain activities that are suggestive of a greater functional capacity than alleged rendering [his] allegations of debilitating limitations less persuasive. [Bradley]'s established functional limitations secondary to the medically determinable impairments are accommodated in the above residual functional capacity assessment through the limitation to light work as defined in 20 CFR 404.1567(b) except with frequent postural movements but occasional climbing ladders, ramps, and stairs.  To accommodate potential breathing issues from lung cancer with lobectomy, the undersigned finds that [Bradley] must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. There is no indication in the record as a whole that [Bradley] is more limited than found in the residual functional capacity.

*Id*.

**E.  Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Bradley could perform his past relevant work as a conference officer and a retail salesclerk. *Id*.

In sum, the ALJ concluded that Bradley "has not be under a disability, as defined in the Social Security Act," from January 31, 2021 (which is the alleged onset date), through the date of the ALJ's decision on May 9, 2023. *Id*. at 34. Thus, he denied Bradley's claim for benefits. *Id*. at 35.

## V. Discussion.

The brief filed by Bradley is unfocused and touches on many issues. *See doc. 9* (passim).[8] We first address Bradley's claim that the ALJ erred by failing to consider whether he was entitled to a closed period of disability. We conclude that because the ALJ focused on Bradely's improvement following his two cancer surgeries and his radiation treatment and did not articulate whether there was a 12-month period before he improved when he was disabled, the ALJ's decision is not supported by substantial evidence.

---

[8] Bradley's brief also incorrectly asserts that his claim was denied at step 5. *Doc. 10* at 7. The brief also asserts that his claim was , "denied at Step 4 by the ALJ, who determined that Claimant's severe impairments did not meet any of the Listings." *Id*. Although the ALJ did deny Bradley's claim at step 4, this assertion confuses steps 3 and 4 of the five-step sequential evaluation. There are also other places in Bradley's brief where his counsel confuses the steps of the five-step sequential evaluation. *See id*. (confusing the date last insured with step 1); *id*. (confusing steps 1 and 2 by asserting that "[a]t Step 2, the ALJ found that Claimant has not engaged in substantial gainful activity since his alleged onset date"; *id*. (confusing steps 2 and 3 by asserting that at step 3 the ALJ found that he has severe impairments).

### A.  The ALJ's decision is not supported by substantial evidence.

Bradley contends that "the ALJ should have considered the medical records and [his] testimony . . . regarding the frequency and intensity of his issues from [his] impairments and the limitations upon his functioning both while actively treating for both his Prostate Cancer and Lung Cancer, as well as the effects and limitations he suffered from thereafter, including at the time of the hearing in this matter." *Doc. 10* at 12.  More specifically, he argues that the ALJ should have included additional limitations in his RFC "due to (1) symptoms from [his] condition post-treatment for Lung Cancer and Prostate Cancer, (2) the time he was unable to work for active Lung Cancer and Prostate Cancer treatment (including recovery from surgery), (3) ongoing prostate issues including bladder spasms, urinary frequency and incontinence, and (4) his ongoing issued with breathing and fatigue related to his Lung Cancer." *Id*. at 12–13  He also contends that the ALJ should have included limitations in the RFC for his need "to take unscheduled breaks to deal with issues related to his cancer treatment," his need to "be off task as a result of ongoing leakage and urinary frequency issues that he suffered from [] the time he was treating for his prostate cancer, as well as his leakage and urinary frequency issues thereafter and leading up to the hearing in this matter," and his "ability to remain on task, as a result of issues he has on [a] regular basis with dyspnea, breathing and fatigue, related to his Lung Cancer, and bladder spasms and

pain related to his Prostate Cancer." *Id*. at 14–15.  And he concludes that the ALJ failed to properly consider whether he was entitled to a closed period of disability "as it is evident from the record that there was at least a period of twelve (12) consecutive months during which [he] would have been incapable of substantial gainful activity while treating for his Prostate Cancer and Lung Cancer, which treatment was back-to-back." *Id*. at 12.

As set forth earlier, to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "In the typical disability case, a claimant's application for benefits is decided while he is under a continuing disability." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).  And "[o]nce the application is granted, payments continue in accord with that decision." *Id*.  "Termination of the benefits then involves a subsequent hearing—a termination case—in which the Commissioner reviews (and decides whether to terminate) the continued payment of benefits." *Id*.  But "'[i]n a "closed period" case, the decision maker determines [whether] a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" *Townsend v.*

19

*Sec'y U.S. Dep't of Health & Hum. Servs.*, 553 F. App'x 166, 168 (3d Cir. 2014) (quoting *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir. 1987)).  "Typically, both the disability decision and the cessation decision are rendered in the same document." *Pickett*, 833 F.2d at 289 n.1.  Thus, "[t]he claimant in the 'closed period' case would receive a lump-sum check for the period of disability, but would not be found entitled to current monthly benefits." *Id.*

When considering a closed period case, evidence of the claimant's condition after the closed period is relevant but not dispositive of eligibility for disability. *Lee v. Comm'r of Soc. Sec.*, 248 F. App'x 458, 461 (3d Cir. 2007) (agreeing "that Lee's return to work is not dispositive of her eligibility for a closed period of disability[,]" but stating that "Lee's ability to work on a sustained basis, however, was relevant").  Furthermore, where "a significant portion" of the record cited by the ALJ "is outside the relevant closed disability period[,]" there may be "insufficient evidence to sustain the ALJ's decision." *Townsend*, 553 F. App'x at 168.

The ALJ is required to consider whether a claimant is entitled to a closed period of disability. *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013) (noting "the truism that the disability inquiry must be made throughout the continuum that begins with the claimed onset date and ends with the hearing date, much as though the ALJ were evaluating a motion picture at every frame of that

time period instead of the ALJ's evaluation of a snapshot taken on the date of the hearing"); *Pena v. Barnhart*, No. 01 CIV. 502 (BSJDF), 2002 WL 31487903, at *11 (S.D.N.Y. Oct. 29, 2002) ("In determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every period during which Plaintiff may have been disabled.").[9]

An ALJ's failure to consider whether a claimant is entitled to benefits for a closed period between the alleged onset date and the date of the ALJ's decision is an error that may—or may not—require remand. *Compare Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (reversing and remanding to the District Court with instructions to remand to the Commissioner given that the ALJ failed to consider a medical opinion that was material to whether the claimant "was at least entitled to disability benefits during the twelve-month period following [her] fall"), *Tylecia M. o/b/o C.O. v. O'Malley*, No. 21 CV 2392, 2024 WL 1050177, at *10 (N.D. Ill. Mar. 11, 2024) (remanding for the ALJ to consider whether the claimant was disabled for a closed period and noting and citing cases for the proposition that

---

[9] We are aware that some courts have suggested—without detailed analysis—that where a claimant has not requested a closed period of disability at the administrative level, he or she is precluded from arguing that the ALJ erred in failing to consider a closed period of disability. *See e.g. Brittany V. v. Kijakazi*, No. 3:20-CV-14505, 2023 WL 2263749, at *15 (D.N.J. Feb. 28, 2023) (citing cases). But the Commissioner has not argued here that Bradley is precluded from making the argument or that there should be an issue-exhaustion requirement imposed in this context.

"[c]ourts routinely remand in this context when the ALJ fails to discuss whether a closed period was considered"), *Simmons v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-1958-T-MCR, 2020 WL 5627464, at *3 (M.D. Fla. Sept. 21, 2020) (concluding that in light of the medical records in that case, the ALJ's failure to address whether the claimant was entitled to closed period of disability was an error requiring remand), *and Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075–76 (N.D. Ill. 2013) (remanding for the ALJ to "specifically evaluate whether Calhoun was disabled for any consecutive 12 month period, even if the ALJ finds that Calhoun is not currently disabled"), *with Vizcarrondo o/b/o J.J.V. v. Kijakazi*, No. 3:20-CV-02367, 2022 WL 3142345, at *4 n.2 (M.D. Pa. Aug. 5, 2022) (rejecting argument that ALJ erred by failing to award benefits for a closed period of disability where "[i]n making []his determination, the ALJ considered the entire record, not just evidence from J.J.V.'s period of improvement"), *and Reed v. Colvin*, No. 1:14-CV-080 JD, 2015 WL 4921614, at *7 (N.D. Ind. Aug. 18, 2015) (concluding that although he ALJ did not expressly consider whether the claimant was entitled to a closed period of disability that ALJ implicitly did so and given that the ALJ relied substantially on records from within the purported closed period, that ALJ concluded that the claimant was not disabled or a period of 12 months).

Although Bradley's brief is unfocused, the Commissioner recognized that he was claiming that the ALJ failed to consider whether he was entitled to a closed period of disability. *See doc. 14* at 14–15 ("First, Plaintiff argues that the ALJ did not consider the frequency and intensity of his impairments and limitations while undergoing treatment for prostate and lung cancer or whether he is entitled to a closed period of disability.").  In addition to summarizing the ALJ's decision— which we have summarized above and which relies heavily on Bradley improving after his surgeries and radiation treatment—the Commissioner cites some of Bradley's medical records. *See id*. at 15–17.  But the Commissioner does not specifically address Bradley's contention that the ALJ failed to properly consider whether he is entitled to a closed period of disability.

Here, the ALJ's decision cannot reasonably be read to conclude that Bradley, who underwent two cancer surgeries and a course of radiation and who asserted (and whose medical records documented) that he had side effects, such as urinary frequency and fatigue, therefrom, had the RFC to perform light work at all times from his alleged onset date to the date of the ALJ's decision.  Rather, the ALJ based in decision principally on Bradley's improvement following his surgeries and radiation.  Yet the ALJ did not explicitly address when Bradley improved or whether there was a 12-month period where he was disabled before he improved.

We note that the ALJ did state that "[b]y December 2021, [Bradley] resumed normal activity with no cardiopulmonary limitations." *Admin. Tr.* at 31.  But the ALJ also recognized that Bradley underwent radiation therapy for his prostate cancer and he "developed acute side effects of frequent urination, urgency, and occasional leakage[,]" but "[r]adiation oncology expected improvement in one to two months." *Id*. at 30  And the ALJ recognized that Bradley completed radiation therapy in January 2022. *Id*.  One to two months after January 2022, would be February or March 2022, both of which are more than 12 months after Bradley's alleged onset date of January 31, 2021.  Yet, although the ALJ relied on Bradley's improvement, he did not explain when Bradley improved sufficiently to have an RFC to perform light work.  The ALJ also relied on Bradley's testimony that his "urinary frequency and leakage following therapeutic exercise" improved. *Id*. at 31.  But he failed to observe that Bradley testified that frequency has been a consistent problem since his prostate surgery, frequency is still an issue, and during the best times, he still has to go to the bathroom twice an hour. *Id*. at 48–50.  And while that ALJ also relied on Bradley's ability to work part-time as security guard, *id*. at 31, Bradley testified that when he was doing a five-hour shift as a security officer for the Lebanon School District he had to use the restroom "[a]nywhere between 10 and 12 times," and that frequency remained an issue at his other security job also. *Id*. at 50–51.

24

We note that at the end of his decision, the ALJ states that Bradley "has not been under a disability, as defined in the Social Security Act, from January 31, 2021, through the date of this decision (20 CFR 404.1520(f)." *Admin. Tr.* at 34. Logically, this statement means that "at least implicitly" the ALJ concluded that Bradley "had not been disabled for a continuous period of at least 12 months during the time frame." *Reed v. Colvin*, No. 1:14-CV-080 JD, 2015 WL 4921614, at *7 (N.D. Ind. Aug. 18, 2015). Even so, the ALJ did not articulate why he so found. And as set forth above, the ALJ relied heavily on evidence of Bradley's improvement following his surgeries and radiation treatments, but he did not explain whether there was a 12-month period before such improvement where Bradley's RFC would have been disabling. Given the ALJ's focus on Bradley's improvement without articulating whether there was a 12-month period during which Bradley underwent two cancer surgeries and a course of radiation where Bradley was disabled, we cannot say that the ALJ's decision is supported by substantial evidence. Accordingly, we will vacate the Commissioner's decision.

### B.  Other Claims.

Given our conclusion that the Commissioner's decision must be vacated based on the ALJ's failure to articulate whether Bradley is entitled to a closed period of disability, we will not address Bradley's remaining claims of error.

"Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id.*

### C.  Remand is the appropriate remedy.

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Bradley.  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an

"award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Bradley's claims, and we cannot say that substantial evidence on the record as a whole shows that Bradley is disabled and entitled to benefits.  Thus, we will remand the case to the Commissioner for further proceedings.

27

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge